**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR17-08126-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Matthew Francis Leonard, | |
| Defendant. | |

Defendant Matthew Francis Leonard has appealed Judge Eileen Willett's detention order. Doc. 19. The government has filed a response (Doc. 31), and defense counsel has informed the Court's staff that no reply will be filed. No party has requested a hearing.

I.

The Court's review of the detention decision is *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court must "review the evidence before the magistrate" and any additional evidence submitted by the parties "and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. Under the Bail Reform Act of 1984, Defendant must be detained if the Court finds that no condition or combination of conditions will reasonably assure his appearance at trial or the safety of the community. 18 U.S.C. § 3142(e).

Judge Willett detained Defendant as both a danger to the community and a flight risk. Doc. 13. The government contends that the Court should affirm on both grounds. The government must prove that Defendant is a danger to the community by clear and convincing evidence, 18 U.S.C. § 3142(f), and that he is a flight risk by a preponderance of the evidence, *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

Parties may proceed by proffer at a detention hearing under the Bail Reform Act. *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000) (collecting authorities). In this case, both parties provide various exhibits and factual proffers in their filings. No party has requested an evidentiary hearing, and Defendant has not objected to the proffers or exhibits in the government's response.

II.

Defendant contends that he is a farmer on the Navajo reservation who makes about $400 per month raising corn on his family farm. He asserts that he is not a flight risk, having never travelled far beyond the reservation, and that he is not a danger to the community. His appeal asserts that the Facebook posts cited by the government were made when he was young, and mostly contain quotations from various rap songs. Doc. 19.

The government provides a detailed factual proffer, much of it supported by exhibits. The government notes that Defendant is an active member of the Red Skins Kings (RSK), a violent criminal gang on the Navajo reservation. He is charged with three counts: (1) misprision related to the murder of two people (committed by his brother); (2) making material false statements regarding his knowledge of RSK, its members, and its activities; and (3) tampering with proceedings by concealing his brother's location and helping him evade a federal arrest warrant for murder.

The government proffers the following additional facts. Citations are to exhibits attached to the government's response; footnotes are also from the response:

> RSK is a violent criminal street gang that operates in Lukachukai, Arizona, on the Navajo Indian Reservation. RSK instills fear in the

community by committing violent acts such as murder and sexual assault. RSK uses social media to threaten and intimidate those who would interfere with the gang's criminal activities. RSK members show their gang allegiance by wearing maroon or Washington Redskins clothing; claiming status as "westside" or "WS"; or getting tattoos of "RSK," "Kingz," "XIV," or a crown. RSK graffiti appears in stretches of up to sixty miles on the reservation.

Defendant is an admitted member of RSK, and he appears to be the acting leader of the gang. His brother, D.L., was the leader of RSK, but he is currently incarcerated pending trial for a RICO conspiracy, multiple murders and other related charges in case number, CR 15-8076-PCT-DGC. On July 18, 2015 (when Defendant's brother was actively evading arrest), Defendant posted on Facebook, "I'm the king right now." (Ex. 2 at 4.) D.L. was arrested ten days later in Tempe, Arizona. Since his brother's incarceration, Defendant got a crown tattoo on his back. (Ex. 4 at 3.) One of Defendant's Facebook names is "Mathew Last King Leonard." (Ex. 2 at 1.) Defendant has sought to recruit new members for the gang (id. at 4-5), leading law enforcement to believe that he is helping his brother to run the gang while his brother is in jail. Both of Defendant's parents are also members of RSK (see Ex. 5 re: his father), and his mother is also incarcerated pending trial on a RICO charge in the case cited above.

In December 2014, Defendant's brother murdered two people, D.C. and R.H. He shot them, took them to a wash, dismembered them, and burned them in the middle of the night. During this attack, he was communicating with Defendant and his parents on the phone. Two days later, Defendant posted on Facebook, "Snitches end up in ditches" and "I hear a lots of haters talking when I'm not around, I'm come up and let that choppa chop em down. #ThisLifeiLead."[1] (Ex. 3 at 5.) In February 2015, Defendant told law enforcement that he knew nothing about the missing men. When asked about his Facebook post in a subsequent law enforcement interview, Defendant responded, "fuck 'em, snitches get what they have coming to 'em."

During the February 2015 interview, Defendant also told law enforcement that he did not know what "Kingz" or RSK were, and that he did not know how to contact K.G., an RSK member who was a suspect

---

[1] Investigation of RSK has revealed that the gang generally uses the terms "snitches" and "rats" to refer to those who are disloyal to the gang, not to government informants.

with Defendant's brother in a separate murder investigation. K.G. is also indicted in the RICO conspiracy case. Approximately one month prior, on January 8, 2015, Defendant and K.G. were stopped together with a number of weapons in that murder victim's car. The car had the victim's blood in it.

Defendant later admitted that he is in fact a member of RSK, and phone records show that he had regular contact with murder suspect, K.G. Defendant's affiliation with RSK is documented on social media and through his tattoos. For example, in 2015, Defendant posted "Kingz until the day I D-I-E, XIV for eternity, official Scrap Killa and to all you smurfs. Hide before my bullets find you… #RSKXIV." (Ex. 2 at 3.) When the FBI began to investigate one of his brother's murder cases, Defendant posted on Facebook, "me and my niggas don't tell." (Ex. 3 at 6.) After Defendant was interviewed by the FBI, he posted, "My adversaries getting worried, they getting paranoid buried." (Id. at 4.)

In June 2015, after Defendant's brother had been indicted for one of the murders, the FBI went to his house to arrest him. He was not there, but Defendant was. Defendant told the FBI that he did not know where his brother was. In fact, his brother had been at the house that morning. Phone records show that Defendant was communicating with his brother that day, as well as in the subsequent weeks.

Defendant also reached out to other people on social media and asked them to help his brother while he was avoiding law enforcement detection. In July 2015, he sent a message that explained his brother was laying low because the "feds" were looking for him. (Ex. 2 at 5.) He also wrote, "[T]hat's why we need a start recruiting some soldiers, because we need to get this gang big." (Id.) In another message, he wrote, "I'm just holding the set down I'm the king right now. We needa.start looking.for solid recruits G." (Id. at 4.) That same day, he posted a picture on Facebook wearing RSK colors. The picture is overlaid with the text "THE LAST KING Rise Of A Last King." (Ex. 1.)

When Defendant was arrested on July 23, 2015 with drugs and money in his possession, he finally admitted to law enforcement that he knew where his brother had been hiding. After Defendant's brother was arrested, Defendant regularly communicated with him. In a December 2015 phone call, Defendant can be heard saying "fucking green light" a person who had been identified as a "snitch."[2] In other calls, Defendant

---

[2] Upon information and belief, to "green light" a person is to

told his brother that he was deleting social media accounts or changing the passwords to prevent law enforcement from viewing them. Defendant told his brother that he put his brother's rap videos back up on YouTube, but that he changed them to black and white to make it harder to identify his brother. In the videos, Defendant's brother raps about RSK's activities, including murder. In another call, Defendant refers to someone as a "rat" and says that "all these motherfuckers are rats."

In 2016, the FBI task force officers were on the Navajo Nation Indian Reservation investigating the murders committed by Defendant's brother. They were accompanied by three Assistant United States Attorneys ("AUSAs"). The officers previously had arrested Defendant and were known to him. The officers and AUSAs drove down a narrow one-way dirt road in two large government vehicles to a desolate wash to investigate the scene where Defendant's brother had burned and buried two men after shooting and killing them. Defendant and his father appeared to be gathering wood, but then followed the officers and AUSAs into the wash with their truck, and when the two government vehicles turned around to leave, Defendant and his father stopped their truck facing the government vehicles and got out, thereby blocking the only exit. Defendant "flipped off" and flashed gang signs at the officers and AUSAs. Defendant and his father repeatedly got in and out of their truck such that the officers could not see what they were doing inside. Defendant and his family are known to carry weapons; the FBI has found weapons in their home on numerous occasions. This standoff lasted for several minutes.[3]

Defendant's history is rife with other examples of his intimidation, violence, and possession of weapons. In August 2012, he and his family threatened another family with a gun and machete and flashed hand gestures at them. In May 2013, Defendant and his brother, D.L., were involved in a car fire, at which time law enforcement found a shotgun, rifle, and a case of bullets in the vehicle. In December 2014, Defendant was present when his brother and other RSK members spray-painted the car of a woman who had just been raped by RSK member, K.G., and carjacked by RSK members. As previously mentioned, in January 2015, Defendant and K.G., were found driving the car of a murder victim, and they were armed

---

authorize violence against that person.

[3] Defendant does not contest that this event occurred. Instead, he tries to explain why it was not a big deal. (Doc. 19 at 5). This wash is not on the Leonard's residential property. It is near their cornfield.

with a pipe, knife, air gun, and brass knuckles. They also had a police scanner.

Defendant is also a known drug dealer and an admitted drug user. Numerous sources have reported that Defendant has dealt drugs for years. Defendant's current girlfriend told the FBI that she just learned he was dealing drugs from her home. He has posted numerous items and messages on Facebook that reference his drug dealing, including numerous pictures of drugs and money, as well as a picture of a large amount of packaged drugs on a scale. (Ex. 3 at 4.) Members of RSK "put in work" by threatening and assaulting people to collect drug debts. In one Facebook message, Defendant talks about collecting a debt: "What the fuck is up with what yo ass owes me? Believe me I'mma get one way or another. Best believe that. WS REDSKINKINGZ 14." (Ex. 2 at 6.) When he was arrested in July 2015, he had cash and drugs with him.

Defendant was arrested in this case on June 23, 2017. The FBI asked Defendant where his crown tattoo was, and he said he did not have one. In fact, he has a large crown tattoo on his back. (Ex. 4 at 3.)

When Pretrial Services interviewed Defendant, it appears that he lied about his residence. He told Pretrial Services that he lived with his father. FBI intelligence suggested that he did not live with his father, but instead lived with his girlfriend. He was arrested at his girlfriend's house. Defendant also lied about his employment. He told Pretrial Services that he worked on-and-off for Giant Industries. That company has no record of Defendant ever working there. Defendant refused to take a drug test. Further, Defendant was expelled from high school and is not engaged in any educational pursuits.

Doc. 31 at 2-6.

### III.

The Court must consider the following factors in determining whether pretrial detention is warranted: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against Defendant; (3) Defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.

18 U.S.C. § 3142(g). Addressing these factors, the Court concludes that Defendant should be detained as a flight risk and a danger to the community.

The charges against Defendant are serious, particularly in the context of his active involvement in the RSK gang. They show that Defendant actively sought to conceal his brother and mislead law enforcement officers regarding serious and violent offenses.

The largely unrebutted proffer from the government shows that Defendant is an active member of the RSK gang, has attempted to help his brother evade prosecution for gang-related offenses, including murder, and has issued threats against gang enemies and calls to arms to gang members and sympathizers. Defendant has no job, owns no property, is pursuing no formal education, deals drugs, and repeatedly has misled law enforcement officials. His family members are affiliated with the RSK, and his mother and brother are incarcerated, charged with serious gang-related offenses.

Defendant poses a serious danger to residents and visitors on the Navajo reservation. The Court finds that that Defendant is a danger to the community by clear and convincing evidence and a flight risk by a preponderance of the evidence.

**IT IS ORDERED** that Defendant's appeal of Judge Willett's detention order (Doc. 19) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on _____ for a total of \_\_ days.

Dated this 7th day of August, 2017.

_____
David G. Campbell
United States District Judge